## Case No. 12,438.

### In re SCHAPTER.

[9 N. B. R. 324.] [1]

District Court, S. D. New York. 1874.

BANKRUPTCY—REMOVAL OF ASSIGNEE—FAILURE TO ATTEND REFERENCE.

1. Where an assignee applies to the court for directions. and a reference is ordered to obtain the necessary information upon which to base the direction, and the assignee fails to attend the reference, but acts independently, he will be held to the strictest account.

2. Though the facts disclosed in a case may justify the removal of an assignee. he cannot be removed except upon an application made for this purpose. under section eighteen. general order twenty-three and form number forty-one.

[In the matter of the application of Samuel Schapter, an assignee, for directions.]

D. C. Calvin, for creditor.

C. M. Dickinson, for assignee.

BLATCHFORD, District Judge. The assignee, on the 16th of July, 1873, twenty-six days after his appointment, presented to this court a petition setting forth that, at the time of his appointment, the principal part of the property of the bankrupt consisted of a mortgage on certain personal property in the building known as the "Atheneum Theatre, No. 585 Broadway, New York," and of a mortgage on the lease of said theatre; that such personal property was the chairs and other furniture of a theatre; that the two

---

[1] [Reprinted by permission.]

mortgages were given January 21st, 1873, to one Traphagen, in trust for the bankrupt, by a son of the bankrupt, on the conveyance of the personal property and the assignment of the lease by the bankrupt to his said son; that five days after the appointment of the assignee Traphagen assigned the mortgages to the assignee; that they are given to secure twenty thousand dollars, on which about two thousand five hundred dollars has been paid; that said conveyance and said assignment to the bankrupt's son were without consideration and for the purpose of placing the same beyond the reach of the bankrupt's creditors; that shortly before the appointment of the assignee the son abandoned the theatre; that the assignee took possession of the premises and foreclosed the mortgage on said property, and it was sold under such foreclosure on the 5th of July, 1873, and bidden in by the assignee, as such, and for the benefit of the bankrupt's estate, for two thousand five hundred dollars, there being no other bidders at the sale; that at the time he took possession of said premises and said property the agent of the owner of said property agreed to recognize him as rightfully in possession of said property, and to maintain him in said possession if he would pay, from that time, the weekly rent of two hundred and twelve dollars and fifty cents, payable by the terms of the lease; that he has since paid it in order to protect said property; that a large part of said personal property consists of articles adapted solely to theatrical purposes, and could not be used to advantage in any other theatre; that if said personal property were sold now and sold separately from said lease, it would be almost entirely sacrificed; that the lease does not expire until May 1st, 1876; that the season for theatrical performances does not open until about the 1st of September, and said property cannot now be sold without great loss to the bankrupt's estate; that the mortgage on the lease was given to secure the payments on the mortgage of personal property, and there is now due on the latter about ten thousand dollars; and that the assignee is now negotiating with parties who desire to lease said theatre until the theatrical season opens, at a rent at least equal to the amount required to be paid by said lease, and is assured that if he can obtain authority to lease said theatre he can at once effect a lease of the same that will save the estate of the bankrupt from further expense until the mortgage on said lease can be foreclosed, and he acquire title to all of the same, and offer for sale together said personal property and said lease.

The prayer of the petition is for an order authorizing the assignee to lease said premises until he can acquire title to and sell said lease, and authorizing him to pay the rent of said premises until he can let said premises, and dispose of said property and lease. This petition was sworn to by the assignee on the 15th of July, 1873. Upon it an order was made by the court referring it to the register in charge of the case to inquire into the facts set forth in it and in certain affidavits which accompanied it, and, if in his judgment for the best interests of the estate, to make an order authorizing the assignee to sublet the said premises and the said personal property upon such terms as the assignee and register shall approve, and to pay the rent of said premises until he can rent the same, or sell such interest as he may have in said lease and said personal property, on terms to be approved by the assignee and the register.

It is clear, from the language of the petition, that the assignee was of opinion that he had not acquired title to the lease; that he desired to do so by foreclosing the mortgage thereon; that he was of opinion that he had acquired title to the personal property by foreclosing the mortgage thereon; and that he contemplated letting the premises and the personal property only until about the 1st of September; and was negotiating with parties who desired to lease the theatre until that time, at a rent sufficient to save the estate from expense. The manifest purport of the petition is, that the mortgage on the lease could be foreclosed by the 1st of September, so as then to have a sale of the lease and of the personal property together, and that until that time it was possible and desirable to sublet the theatre and let the personal property, so as to cover the rent accruing on the lease. Such was the intent of the order made on the petition. The lease is for four years from May 1st, 1872, at a weekly rent, in advance, of one hundred and seventy-five dollars, from May 1st, 1872, to May 1st, 1873, of two hundred and twelve dollars and fifty cents from May 1st, 1873, to May 1st, 1874, and of two hundred and twenty-five dollars from May 1st, 1874, to May 1st, 1876.

The assignee took no steps under the order of reference to the register, but made efforts to sublet the premises, and finally, as the best thing he could do, let them and the personal property to one Sherman, until the 1st of August, 1874, at a weekly rent of two hundred and twenty-five dollars until October 1st, 1873, of two hundred and thirty-seven dollars and fifty cents, thereafter and until January 1st, 1874, and of two hundred and fifty dollars thereafter and until August 1st, 1874. Sherman, after a week, turned the premises and property over to the bankrupt, he agreeing to perform the terms of Sherman's hiring from the assignee. The bankrupt turned the premises and property over to one Craig, and Craig is now receiving a rent of three hundred and twenty-five dollars per week therefor. On the 5th of August, 1873, Charles Devlin, a creditor of the bankrupt, for a debt duly proved, presented a petition to the court setting forth that the purchase made by the assignee on the foreclosure was made in the interest of the bankrupt; that the sale was so conducted as to prevent fair competition; that the notice

published of the mortgage sale (it being a foreclosure by advertisement) contained no notice as to who was the owner of the property or of the mortgage, or for whose benefit the mortgage was to be foreclosed; that while a material and valuable part of said lease consisted of the right of ingress and egress to and from the premises from Broadway, no reference thereto was made in such notice; nor did the notice state that the property was theatre property, or what was the unexpired term of the lease; that since the sale the bankrupt has assumed the possession and control of the property, and claims the ownership and management thereof; that the petitioner is apprehensive that under the said order of reference a hearing may be had before the register without any notice to the creditors, and that, by the connivance of the assignee and the bankrupt, the property may be improvidently leased secretly and for the benefit of the bankrupt, for the reasons: that the assignee has frequently held private consultations with the bankrupt, and has placed the property under his care and control, and has refused to communicate his proceedings to the creditors; that the assignee has received an offer to rent the premises from one Wolcott, a theatrical agent, and, instead of answering the offer, immediately communicated it to the bankrupt, who boasts that he has control of the same and has paid the rent of the premises, and intends to keep the former occupants and the petitioner (who had an assignment of said property and lease as security for advances made to the bankrupt's son, and who is interested as such assignee as well as creditor of the bankrupt, in procuring the best possible sale of said property) out of the same; and that the present time (the petition being sworn to August 5th, 1873), is a favorable one for the sale of said property, as theatrical managers are now seeking engagements for the coming season, and the property can now be disposed of at the best advantage for the creditors of the bankrupt. The prayer of the petition is that the property may be sold by the assignee on due and proper notice to all the parties interested, including the creditors of the bankrupt, and that the order of July 16th, 1873, may be modified to that effect.

On the 5th of August, 1873, the court made an order of reference to take testimony as to the facts set forth in such petition, and particularly as to the propriety of the sale of the property mentioned in the petition. The testimony so taken, which is now presented, occupied much time in the taking and covered a wide range. It establishes, I think, the fact that the foreclosure proceedings were so conducted as not to be likely to produce competition in bidding at the sale, or any such price for the property as would probably have been produced if the proceedings had been conducted properly and solely with a view to obtain the largest price, on a sale which could have given to the purchaser a good title to the lease.

The published notice of sale is open to the criticisms made on it in the petition of Devlin, and the entire proceedings at the sale were such as to lead to the inference that no idea that there was to be or should be a bona fide sale could have been entertained by any of the parties concerned. The evidence shows that both the lease and the personal property were pretended to be sold, and that the assignee bid in both of them for the benefit of the estate. Thus far there was no prejudice to the estate. In one way there was a benefit to it, for the foreclosure as to the movable personal property was regular, and the title to it thus became absolutely vested in the assignee. But the foreclosure by advertisement, of the lease, could amount to nothing, on such length of notice as was given and published, as a statutory foreclosure. Yet it was not wise to sell the movable personal property apart from a sale of the lease, because a sale of the two together would produce more for the estate than sales of the two separately. The effect, however, of a pretended purchase of the lease by the assignee, and of his claim of title, as assignee, to the possession of the premises, and of the movable property, was to deter all persons from resisting his claim, as an officer of this court, and to enable him to manage the property as he pleased. What has since occurred, coupled with the failure of the assignee, to proceed and regularly foreclose the mortgage on the lease, and the other evidence in the case, has satisfied me that the assignee suffered himself to be made use of to promote a scheme to get the property back into the hands of the bankrupt, by tying it up through a letting which should prevent its being sold till the letting should expire. The lease being limited in duration, every week of it that expired it was of so much less value as a whole, its only value consisting in what it could be sublet for per week, over and above the weekly rent, to the original lessors. Hence, the only way to realize the largest possible sum for it, for the benefit of the creditors of the estate, was to foreclose as soon as possible the mortgage on the lease, and sell the lease and with it the movable property. Instead of that, the right of occupation for a year was parted with, presumably postponing a sale for that period. This was done without the sanction of the court, and in the face of the petition by the assignee, and the order of reference thereon, before referred to.

It is true that the assignee secured, by his leasing to Sherman, over and above the rent to the original lessors, twelve dollars and fifty cents a week until October 1st, 1873, and twenty-five dollars a week thereafter and until January 1st, 1874, and thirty-seven dollars and fifty cents a week thereafter and until May 1st, 1874, and twenty-five dollars

a week thereafter and until August 1st, 1874, and that he must account to the estate in respect thereof. It is true, also, that some prompt letting of the premises was necessary either to save the lease from being forfeited for non-payment of rent, or to save the estate from being burdened with the expense of paying the rent without having it reimbursed. But no letting such as this, without the authority of the court, and contrary to what had been represented in the petition of the assignee to be the proper course, and attended by all the circumstances which preceded and surrounded this letting, can be sanctioned by the court. So long as the owner of the premises recognizes Craig as rightfully in possession through the assignee, under the lease, and so long as Craig claims such possession under the assignee, and the occupants under Craig recognize their occupation under him, and the owner receives his rent from Craig, it will be proper to hold the assignee to account in respect of rent for the subletting, (but at what rate will remain to be determined) although the assignee really had no title to the lease so as to sublet it, but was all the time only the owner of a mortgage on it. That the lease is valuable is shown by what has transpired. It seems to be worth at present over one hundred dollars a week; but as the assignee only owns a mortgage on it he cannot sell it except by foreclosing such mortgage. The mortgage ought to be foreclosed at once, and the lease be sold. The letting of the premises and of the movable property, not having been authorized or sanctioned by the court, those who are in possession under such letting can claim no rights as against such order in the premises as the court may now make.

In regard to the suggestion made on the agreement, that the assignee ought to be removed, the petition does not ask for it, and proceedings for the removal of an assignee must be conducted in accordance with section eighteen of the act, and general order number twenty-three, and form number forty-one.

An order will be entered in accordance with this opinion.